UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TERESA E. DEAN, Individually
and as parent and natural guardian                              **REPORT**
for J.D.J.,                                                                          **and**
                                                    Plaintiffs,          **RECOMMENDATION**

              v.                                                                    **07-CV-94S(F)**

SCHOOL DISTRICT OF THE CITY OF
NIAGARA FALLS, NEW YORK,
CARMEN GRANTO,
CYNTHIA A. BIANCO,
MARIA CHILLE ZAFUTO,
JO A. HOLODY,
                                                    Defendants.

_____

APPEARANCES:            MALONEY & MALONEY
                                    Attorneys for Plaintiffs
                                    MARY E. MALONEY, of Counsel
                                    256 Third Street, Suite 21
                                    Niagara Falls, New York 14303

                                    HISCOCK & BARCLAY LLP
                                    Attorneys for Defendants
                                    DENNIS R. MCCOY,
                                    FRANK V. BALON,
                                    APRIL J. ORLOWSKI, of Counsel
                                    1100 M&T Center
                                    Three Fountain Plaza
                                    Buffalo, New York 14203-1486

## JURISDICTION

By order dated March 29, this case was referred to the undersigned by the

Honorable William M. Skretny for disposition of all non-dispositive matters and report

and recommendation on all dispositive issues.  The matter is currently before the court

on Defendants' cross-motion for summary judgment, filed March 2, 2008.  (Doc. No. 31)

("Defendants' Cross-Motion").

## BACKGROUND

Plaintiff Teresa E. Dean ("Dean"), individually and as parent and natural guardian of infant-Plaintiff J.D.J. ("J.D.J."), commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") on February 21, 2007, alleging Defendants violated the Fourteenth Amendment ("the Fourteenth Amendment"), the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and New York law.  Complaint ¶ 1.  Specifically, Plaintiffs, allege that Defendants, on several occasions between September 2004 and January 2006, denied J.D.J. his right to a free and appropriate education under the Fourteenth Amendment by prohibiting his attendance at Niagara Middle School, by failing to provide him with educational services to accommodate his disability under the IDEA and in failing to develop an Individualized Education Program ("IEP") for him as required by the IDEA.  Complaint ¶¶ 14, 23, 26 - 28, 32, 33-37, 40-41; Defendants' Statement of Undisputed Facts (Doc. No. 31, attachment) ("Defendants' Fact Statement") ¶¶ 10, 12-13.  Additionally, Plaintiffs assert violations of the Fourteenth Amendment alleging Defendants' failure to provide a free and appropriate education, Complaint ¶ ¶ 33-39, and Plaintiff J.D.J.'s rights protected by 42 U.S.C. § 1983. Complaint ¶ ¶ 40-43.   Plaintiffs also assert state law claims for assault and battery, and defamation. Complaint ¶¶ 25, 29; Defendants' Fact Statement ¶ 14.  Plaintiffs seek relief for "monies for additional years of education beyond said plaintiff's twenty-first birthday," as well as compensatory and punitive damages and attorneys' fees and costs.  Complaint at 11; Defendants' Fact Statement ¶ 15.

On March 22, 2007, Defendants filed separate answers.  (Doc. No. 2) ("Bianco Answer"), (Doc. No. 3) ("Granto Answer"), (Doc. No. 4) ("Holody Answer"), (Doc. No. 5) ("School District Answer"), (Doc. No. 6) ("Chille Zafuto Answer").

On May 2, 2008, Defendants filed a Notice of Cross-Motion for Summary Judgment (Doc. No. 31) ("Defendants' Cross-Motion"), along with a Statement of Undisputed Material Facts (Doc. No. 31, attachment 1) ("Defendants' Fact Statement"), an Appendix to Defendants' Fact Statement (Doc. No. 31, attachment 2) ("Appendix to Defendants' Fact Statement"), Exhibits A through I (Doc. No. 31, Exh. ___), the Declaration of Frank V. Balon, Esq. ("Balon Declaration"), a Memorandum of Law in Support of Defendants' Cross-Motion ("Defendants' Memorandum"), and exhibits.

Plaintiffs, on July 20, 2008, filed a Memorandum of Law in Opposition to Defendants' Cross-Motion, (Doc. No. 38) ("Plaintiffs' Memorandum in Opposition") to which Plaintiffs attached a Statement of Undisputed Facts ("Plaintiffs' Fact Statement"), and Exhibits 1 through 10 to Plaintiffs' Fact Statement ("Plaintiffs' Fact Statement, Exh(s). ___").[1]  (Doc. No. 38).  On August 11, 2008, Defendants filed a Reply Memorandum of Law in further support of Defendants' Cross-Motion for Summary Judgment.  (Doc. No. 41) ("Defendants' Reply Memorandum").  Based on the following, Defendants' motion for summary judgment should be DENIED, in part, and DISMISSED as moot, in part.

---

[1] Plaintiffs filed a Statement of Facts as Amended with the required signature of counsel on July 21, 2008.  (Doc. No. 39).

**FACTS[2, 3]**

Plaintiff J.D.J. brings this action by Teresa Dean, his parent and guardian.  At all times relevant, Plaintiff J.D.J. was a student enrolled in the City of Niagara Falls School District in Niagara Falls, New York ("the School District").  Defendants' Fact Statement at 1 (citing Defendants' Cross-Motion, Exh. I) ("Chille-Zafuto Affidavit").  J.D.J., a student who took honors classes at Niagara Falls Elementary and a math class at the University at Buffalo, having an I.Q. of 141, was diagnosed with Asperger's Syndrome, Oppositional Defiant disorder and some symptoms of separation anxiety in June 2004.  Complaint ¶ 15; Defendants' Answers ¶¶ 16; Plaintiffs' Memorandum in Opposition, Exh. 8 (entry Nov. 28, 2005).  In August 2004, Dean notified the District, through its employees, Maria Chille Zafuto ("Chille-Zafuto"), Principal of Niagara Middle School in the City of Niagara Falls, and Jo A. Holody ("Holody"), School Nurse at Niagara Middle School in the City of Niagara Falls, of J.D.J.'s diagnoses.  Complaint ¶ 17; Holody and Chille-Zafuto Answers ¶¶ 18.

The School District adopted an Accommodation Plan for J.D.J. pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which permitted J.D.J. to arrive at school one-half hour after and leave school one-half hour before the rest of his class, as well as providing other minor accommodations.[4]  Section 504 Accommodation

---

[2] Taken from the pleadings and papers filed in this action.

[3] Facts have been admitted or uncontested.

[4]  The Accommodation Plan appears to have been implemented on September 20, 2004, and was reevaluated and was to continue through May 13, 2006.  Plaintiffs' Memorandum in Opposition Exh. 4 ("Section 504 Accommodation Plans").

Plans.  The 2004-2005 Section 504 Accommodation Plan stated J.D.J.'s "limited major life activity" was "Asperger's disorder," and identified J.D.J. as also suffering from Oppositional Defiant Disorder and symptoms of separation anxiety.  *Id.*; Plaintiffs' Fact Statement ¶ 8.

Plaintiffs completed and submitted to the School District all mandated medical forms prior to commencement of the 2005-2006 school year.  Plaintiffs' Fact Statement ¶ 5; Plaintiffs' Memorandum, Exh. 4.  By letter dated May 26, 2005, Bonnie Kane, 504 Compliance Officer for the School District, informed Teresa Dean that the school's 504 Committee recommended Plaintiff J.D.J. be "classified as a student with a disability that substantially limits one or more major life activities," and that he receive the "accommodations" listed on an Individualized Accommodation Plan enclosed with the letter.  Plaintiffs' Memorandum in Opposition Exh. 4.  On May 31, 2005, Chille-Zafuto and Holody sent J.D.J. to the child psychological ward at Niagara Falls Medical Center in an ambulance.  Complaint ¶ 24; Defendants' Answers ¶¶ 25.  Beginning May 31, 2005, Plaintiff Teresa Dean began documenting her encounters with Defendants.[5] Plaintiffs' Fact Statement ¶ 16 (citing Plaintiffs' Memorandum in Opposition Exh. 8).

On October 25, 2005, Teresa Dean met with Principal Chille-Zafuto, and two of J.D.J.'s teachers, Mrs. Kurek and Mr. Corsaro, to discuss J.D.J.'s behavior.  Plaintiffs' Memorandum in Opposition, Exh. 8 (entry October 25, 2005).  As of that date, Mr. Corsaro was unaware of J.D.J.'s disability.  *Id.*  Chille-Zafuto stated she would copy material that Dean brought to the meeting which described in detail  Asperger's

---

[5] Dean produced this documentation for Defendants in Plaintiffs' Response to Defendants' Demand for Documents.  Plaintiffs' Fact Statement ¶ 16.

Syndrome to J.D.J.'s teachers, but did not make copies of the material from Dean.  *Id.*

Subsequently, on November 23, 2005, Holody gave Plaintiffs a form indicating that

J.D.J. may no longer attend school for an indefinite period of time until Plaintiff J.D.J.

was evaluated by his doctor and went for bloodwork.  Plaintiffs' Memorandum in

Opposition, Exhs. 1 & 8.  On the form, Holody wrote "A recent health appraisal of your

child indicates 4th episode in 1 wk [sic].  Medication has been changed.  Therapeutic

levels maybe [sic] interacting with hormone changes."  *Id.*; Plaintiffs' Fact Statement ¶ 1.

However, Teresa Dean was unable to obtain the bloodwork because J.D.J.'s doctor, Dr.

Paul Fazekas, would not authorize it.  Plaintiffs' Memorandum in Opposition, Exh. 8

(entry Nov. 28, 2005).  Also on November 23, 2005, Principal Chille-Zafuto wrote an e-

mail to Cynthia A. Bianco, Assistant Superintendent of Niagara Falls City School

District, requesting approval for a medical home teaching.  Plaintiffs' Memorandum in

Opposition, Exh. 2; Complaint ¶ 10; Defendants' Answers ¶ 11.  In the e-mail, Chille-

Zafuto acknowledged that J.D.J. suffers from Asperger's Syndrome[6] and is bipolar, and

expressed her belief that the District is "not equipped with the personnel to help [J.D.J.]

cope with our learning environment."  Plaintiffs' Memorandum in Opposition Exh. 2

(bracketed material added).  Specifically, Chille-Zafuto explained

> [J.D.J.] has, on at least 15 different instances, blacked out
> for periods longer than 15 minutes.  We have evacuated
> classrooms, the cafeteria, hallways, lavs, gyms and more
> when these episodes occur and have called 911 to have him
> removed and evaluated.  We have worked with mom and his
> doctors/therapists to provide a shortened day, have constant
> interventions in place with special codes for our radios, we

---

[6] In the same e-mail, Chille-Zafuto requested that J.D.J. receive medical home schooling until he could be evaluated for Asperger's Syndrome.

> have a crisis team plan for him and much more.  Despite our
> continued efforts, [J.D.J.] continues to have episodes,
> characterized by catatonic states, blank stares, hysterical
> outbursts, dropping to the floor (he is about 200 pounds) and
> hitting head, etc...

Plaintiffs' Memorandum in Opposition, Exh. 2.

By correspondence dated December 22, 2005, Teresa Dean, at the request of

the District's attorney, Maria Massaro ("Massaro"), submitted a written request[7] to the

District that J.D.J. be evaluated by the District's Committee on Special Education

("CSE") for suspected learning problems and to determine if "special education services

are warranted."  Plaintiffs' Memorandum in Opposition Exh. 5; Notice of Cross-Motion

Exh. I ¶ 3.  This request, prepared by Massaro and faxed to Dean through her attorney,

was received by the District by fax on December 30, 2005 and January 3, 2006 by

United States mail.  Plaintiffs' Fact Statement ¶ 10 (citing Plaintiffs' Memorandum in

Opposition, Exhs. 5 & 6).  Upon receipt of Dean's request, Dorcas Thomas, Committee

on Special Education ("CSE") Chairperson for the District, mailed Dean a form entitled

"Committee on Special Education Consent for Special Education Services" ("Consent

Form"), along with a copy of the Procedural Safeguards Notice which explains a

parent's rights regarding the special education process.  Notice of Cross-Motion Exh. B.

Dean signed and returned the Consent Form, whereupon she acknowledged receiving

the Procedural Safeguards Notice.  Chille-Zafuto Affidavit ¶ 7.

J.D.J. returned to school on January 3, 2006.  Plaintiffs' Memorandum in

Opposition, Exh. 8 (entry Jan. 3, 2006).  On January 4, 2006, Plaintiff, Teresa Dean,

---

[7] The District would not conduct an evaluation until it received a written request from Teresa
Dean.  Plaintiffs' Fact Statement ¶ 10 (citing Plaintiffs' Memorandum in Opposition, Exhs. 5 & 6).

Plaintiffs' attorney, Mary Maloney, Defendants Chille-Zafuto, Holody, Massaro, school psychologist Bonnie Kane, and school counselor Molly Kurak met at Niagara Middle School to discuss adjustment to J.D.J.'s Section 504 Plan based on J.D.J.'s approximately seven-week expulsion.  Plaintiffs' Fact Statement ¶ 15.  J.D.J. received no educational services while he was expelled, nor was he given a hearing or advised of any procedural rights prior to being expelled.  Plaintiffs' Fact Statement ¶¶ 20-21.

On February 6, 2006, Teresa Dean and her attorney attended the Committee on Special Education meeting.  Plaintiffs' Fact Statement ¶ 11.  By letter dated February 13, 2006, Marsha Piccirillo, Local Educational Agency Representative ("LEA Representative") for the School District informed Plaintiffs' attorney that the CSE recommended J.D.J. be "classified as a student with a disability" entitled to "receive special education services."[8]  Plaintiffs' Fact Statement ¶ 12.  By letter dated February 15, 2008, Susan Kuznik, CSE chairperson for the District informed Teresa Dean that J.D.J., as a home schooled student, is not entitled to special education services under IDEA or New York state law.  Plaintiffs' Fact Statement ¶ 18; Plaintiffs' Memorandum in Opposition, Exh. 10.

The District admitted in an audio-taped meeting held in the Spring of 2006 to making reports of child abuse to Children & Family Services concerning J.D.J., which proved "unfounded."  Plaintiffs' Fact Statement ¶ 17; Plaintiffs' Memorandum in Opposition, Exh. 9.

---

[8] An Individualized Education Program (IEP) was enclosed.  Plaintiffs' Memorandum in Opposition, Exh. 7.

## DISCUSSION

### I.    Motion for Summary Judgment

Defendants cross-move for summary judgment pursuant to Federal Rule of Civil

Procedure 56 ("Rule 56") seeking dismissal of the Complaint and Plaintiffs' motion to

compel.  Defendants' Cross-Motion at 1; Defendants' Memorandum at 2.  In particular,

Defendants assert that (1) this court lacks subject matter jurisdiction over Plaintiffs'

federal law claims because, according to Defendants, Plaintiff Dean failed to exhaust

her administrative remedies; (2) because this court does not have subject matter

jurisdiction over Plaintiffs' federal claims, the court cannot exercise supplemental

jurisdiction over Plaintiffs' state law claims; and therefore (3) Plaintiffs' claims, including

Plaintiffs' motion to compel (Doc. No. 27)[9] the School District defendants and specific

employees of the School District to appear for depositions should be dismissed.

Defendants' Memorandum at 11.

In opposition, Plaintiffs contend there was no requirement to exhaust

administrative remedies because the School District did not classify J.D.J. as disabled

under the IDEA until after J.D.J. had returned to school from his expulsion[10] and,

although J.D.J. was provided an Accommodation Plan under Section 504 of the

Rehabilitation Act, Plaintiffs assert that the Rehabilitation Act, 29 U.S.C. § 794, which

prohibits programs and activities that receive federal funding from discriminating against

---

[9]  This motion was resolved on May 22, 2008 (Doc. No. 36).

[10] Plaintiffs repeatedly refer to the period between November 23, 2005 and January 1, 2006, in which J.D.J. was prohibited from attending school and did not receive home instruction,  as an expulsion. Because Defendants gave no date by which J.D.J. could return to school, the court will refer to J.D.J.'s absence from school during that time as an expulsion, rather than an extended suspension.

individuals based on a disability, under which J.D.J., in 2004, was considered disabled

and received a Section 504 Accommodation Plan, is distinct from the IDEA.  Plaintiffs'

Memorandum at 2.  Plaintiffs rely on the IDEA as follows:

> [n]othing in this chapter shall be construed to restrict or limit
> the rights, procedures, and remedies available under the
> Constitution, the Americans with Disabilities Act of 1990 [42
> U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of
> 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws
> protecting the rights of children with disabilities, except that
> before the filing of a civil action under such laws seeking
> relief that is also available under this subchapter, the
> procedures under subsections (f) and (g) of this section shall
> be exhausted to the same extent as would be required had
> the action been brought under this subchapter.

20 U.S.C. § 1415(l).

## A.    Subject Matter Jurisdiction

Defendants assert this court lacks subject matter jurisdiction over Plaintiffs' IDEA

Fourteenth Amendment claims based on Plaintiff's failure to exhaust their administrative

remedies, as required by the IDEA, when J.D.J. was expelled from school from

November 23, 2006 - January 3, 2006.  Defendants' Memorandum in Support at 6

(citing *Polera v. the Board of Education of the Newburgh Enlarged City Sch. Dist.*, 288

F.3d 478 (2d Cir. 2002)).  Defendants further contend that Plaintiffs' attempt to recover

compensatory and punitive damages under their Fourteenth Amendment claims, which

are not recoverable under the IDEA, is an impermissible attempt to "sidestep" IDEA's

exhaustion requirement.[11]  Defendants' Memorandum in Support at 7-8.  Finally,

---

[11] Defendants acknowledge that Plaintiffs' request for "monies for additional . . . education beyond J.D.J.'s twenty-first birthday" is actionable under the IDEA, citing *Polera*, 288 F.3d at 490 ("...[Ms. Polera] could have obtained complete relief [under the IDEA] through . . . [a]dditional educational services, and, if

Defendants assert the futility exception to the exhaustion requirement is not available to Plaintiffs because instances in which the Second Circuit has excused plaintiffs from the IDEA's exhaustion requirement involve cases in which so-called systemic violations are alleged that could not be remedied feasibly at the administrative level and Plaintiffs have not alleged any such systemic violations.  *Id.* at 9 (citing *Jose P. v. Ambach*, 669 F.2d 865 (2d Cir. 1982)).

Plaintiffs contend they were not required to exhaust administrative remedies because Plaintiffs argue that the IDEA only applies to students who have been classified as disabled under the IDEA, 20 U.S.C. § 1401(a)(1)(A)(I), and that, at the time of his expulsion, J.D.J., although deemed handicapped by the School District under Section 504 of the Rehabilitation Act, was not classified by Defendants as disabled under the IDEA.  Plaintiffs' Memorandum in Opposition at 2.  Further, Plaintiffs assert it was unnecessary to pursue a "stay-put" action against Defendants because the day after Teresa Dean requested that J.D.J. be evaluated for a disability under IDEA, Defendants agreed to allow J.D.J. to return to school.[12]  *Id.* at 6.  Finally, Plaintiffs assert they were not required to exhaust administrative remedies as a prerequisite to an alleged violation to the Due Process Clause of the 14th Amendment brought pursuant to 42 U.S.C. § 1983, or Section 504 of the Rehabilitation Act, because J.D.J. was not disabled under IDEA when he was expelled.  *Id.* at 9, 12.

---

necessary, remedial education . . ..").  Defendants' Memorandum at 8 (bracketed material added).

[12]  By letter dated February 23, 2006, the District classified J.D.J. as disabled under IDEA, which Plaintiffs rely on to negate the existence of a requirement that Plaintiffs, in November and December of the previous year, were subject to the IDEA's exhaustion requirement.

The IDEA provides federal grant money to states for the provision of a "free appropriate public education" ("FAPE") to disabled children in the "least restrictive environment" ("LRE"). *Polera*, 288 F.3d at 481-82. "The Individuals with Disabilities Education Act prohibits the expulsion of a disabled student for misbehavior that results from or is a manifestation of the disability." 78A C.J.S. <u>Schools</u> § 1096 (citing the IDEA and cases). "Expulsion constitutes a 'change in placement' within the meaning of the Act," necessitating a school's conformance with change in placement provisions in the Act. *Id.* "[A] disabled student's 'exclusion' from regular school classes constitutes a 'change in placement' that triggers the Act's procedural requirements and safeguards." *Id.* "Before bringing an action in federal court, a parent aggrieved by procedural violations of the IDEA must first exhaust administrative remedies." *Engwiller v. Pine Plains Central Sch. Dist.,* 110 F.Supp.2d 236, 245 (S.D.N.Y. 2000) (citing cases). "Failure to exhaust the administrative remedies deprives the court of subject matter jurisdiction." *Cave v. East Meadow Union Free School Dist.*, 514 F.3d 240, 245 (citing *Polera*, 288 F.3d at 483) (citing *Hope v. Cortines,* 69 F.3d 687, 688 (2d Cir. 1995)).

"The exhaustion requirement also applies where plaintiffs seek relief under other federal statutes when relief is also available under the IDEA." *J.S. v. Attica Central Schools,* 386 F.3d 107, 112 (2d Cir. 2004) (citing 20 U.S.C. § 1415(l); *Hope v. Cortines*, 872 F.Supp. 14, 19 (E.D.N.Y. 1995)). However, the IDEA's exhaustion requirement will be excused "where it would be futile or the state's administrative system would be inadequate." *Engwiller,* 110 F.Supp.2d at 245 (citing *Garro v. State of Connecticut,* 23 F.3d 734, 737 (2d Cir. 1994). The futility exception to the exhaustion requirement

should be applied to instances wherein

> (1) it would be futile to use the due process procedures . . . ;
> (2) an agency has adopted a policy or pursued a practice of
> general applicability that is contrary to the law; (3) it is
> improbable that adequate relief can be obtained by pursuing
> administrative remedies (e.g., the hearing officer lacks the
> authority to grant the relief sought) . . . [13]

*Mrs. W. v. Tirozzi,* 832 F.2d 748, 756 (2d Cir. 1987).

The exhaustion requirement will also be excused where parents were not notified of

their rights under IDEA.  *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149

(2d Cir. 2002); *Doe by Gonzales v. Maher*, 793 F.2d 1470, 1490-91 (9th Cir. 1986),

*judgment aff'd as modified, Honig v. Doe*, 484 U.S. 305 (1988) (exhaustion excused

where school district failed to provide notice of procedural rights and remedies required

by 20 U.S.C. § 1415(b)(1)(D) (1982) [20 U.S.C. § 1415(b)(3)(A)(2005)]).

Defendants required Plaintiff to request an evaluation of J.D.J.  under IDEA

before conducting one and before classifying J.D.J. as disabled under IDEA, in

contravention of the 'child-find' provision in the IDEA which requires Defendants to

identify, locate and evaluate students suspected of being a "child with a disability" under

the IDEA.[14, 15] 20 U.S.C. § 1412(a)(3)(A); *A.P. ex rel. Powers v. Woodstock Bd. of*

---

[13] The futility exception has also been applied where administrative decisions are extremely untimely, *Engwiller,* 110 F.Supp.2d at 245 (citing *Frutiger v. Hamilton Central Sch. Dist.*, 928 F.2d 68 (2d Cir. 1991)), and where there has been a "pattern and practice of systemic . . . violations" unable to be remedied by a hearing.  *Tirozzi*, 832 F.2d at 757.

[14] The IDEA provision governing requests for evaluation of potential disability, 20 U.S.C. § 1414(a)(1)(B), states that a parent, State educational agency, other State agency, or local education agency "may initiate a request for an initial evaluation to determine if the child is a child with a disability;" it does not require her to have done so.  20 U.S.C. § 1414(a)(1)(B) (underlining added).

[15] Under 20 U.S.C. § 1401, a "child with a disability" includes children who suffer from autism, of which Asperger's Syndrome is a form.  20 U.S.C. § 1401(3)(A)(i).

*Educ.*, 572 F.Supp.2d 221, 225 (D.Conn. 2008). Plaintiff's Memorandum in Opposition Exh. 5; Plaintiff's Fact Statement ¶ 10; Defendants' Memorandum in Support at 4. Defendants contend that once Dean, on December 22, 2005, made such request, she was provided with the Procedural Safeguard Notice which explained her rights under the IDEA, after which she failed to exhaust her administrative remedies.  Defendants' Reply Memorandum at 5-6; Plaintiff's Memorandum in Opposition Exh. 5.  Despite Defendants' inaction, because Plaintiffs assert a claim under the IDEA, they are required to have exhausted their administrative remedies unless some exception to the exhaustion requirement applies.  *See Babicz v. School Bd. of Broward County*, 135 F.3d 1420, 1422 (11th Cir. 1998) (students with § 504 plans who did not otherwise receive services under IDEA required to exhaust where relief sought was also available under IDEA); *Hope v. Cortines,* 872 F.Supp. 14, 21 (E.D.N.Y. 1995) (ADA and Section 1983 claim not subject to exhaustion if the relief sought is not available under IDEA or an exception to the exhaustion requirement applies).

Here, Plaintiffs were excused from the administrative exhaustion requirement for an IDEA claim because the school district did not provide notice of their procedural rights under IDEA concerning J.D.J.'s expulsion until after Dean requested, on December 22, 2005, Chille-Zafuto Affidavit, Exhs. A & B, that J.D.J. be evaluated under IDEA, *Mason v. Schenectady City Sch. Dist.,* 879 F.Supp. 215, 219 (N.D.N.Y. 1993) (where school district failed to inform plaintiff of her right to notice and a hearing, exhaustion requirement excused), and, because J.D.J. was permitted to return to school on January 3, 2006, the same day that the District received Dean's request by mail to evaluate J.D.J. for disability, pursuing a hearing with respect to his expulsion, which

14

lasted from November 23, 2005 through January 3, 2006, would have been futile as the

District had then agree J.D.J. could return to school.  *Coleman v. Newburgh Enlarged*

*City Sch. Dist.*, 319 F.Supp.2d 446, 451 (S.D.N.Y. 2004) (student excused from

exhaustion requirement where time expended in exhausting administrative remedies

would moot student's claim).[16]  On this record, notice of J.D.J.'s procedural rights should

have been provided at the time of his expulsion, if not earlier, when he was deemed

disabled under the Rehabilitation Act.  In Plaintiff's Memorandum at 20, Plaintiffs

represent that the District advised them of their right, including notice of IDEA, on

December 22, 2005.  In any event, such notice was provided well-beyond November

23, 2005, the date Plaintiff was expelled from school. Thus, Defendants' motion for

summary judgment based on the lack of subject matter jurisdiction for failure to exhaust

administrative remedies as to Plaintiffs' federal claims based on IDEA and the

Rehabilitation Act should be DENIED.


**II.     Plaintiffs' 14th Amendment and Due Process Claims**

        Defendants assert that the IDEA's exhaustion requirement applied to Plaintiffs'

Fourteenth Amendment claim and 42 U.S.C. § 1983 claim, and that Plaintiffs' failure to

exhaust mandates dismissal of those claims.  Defendants' Memorandum in Support at

6, 8.  Specifically, Defendant asserts "[P]laintiffs' claim under the Fourteenth

---

[16] Plaintiffs infer that Defendant's violation was systemic, stating in Plaintiffs' Memorandum in
Opposition, that "[t]he District had a practice of failing to provide a free and appropriate education to
students with Asperger's Disorder" because "[i]t simply did not have appropriate educational services to
offer."  Plaintiff's Memorandum at 16.  Whether these facts can be considered a systemic violation
warranting the futility exception to the exhaustion requirement need not be determined as the court finds
exhaustion was not required based on other grounds.

15

Amendment and . . . under 42 U.S.C. § 1983 are both premised upon the very same theory that [P]laintiffs' IDEA claim is premised upon; namely, that [D]efendants failed to provide J.D.J. with a free appropriate education.  It is irrefutable that this theory subjects both the Fourteenth Amendment claim and the 42 U.S.C. [§] 1983 claim to the exhaustion requirement of the IDEA, which was enacted '. . . [t]o ensure that all children with disabilities have available to them a free appropriate public education." Defendants' Memorandum at 8 (citing 20 U.S.C. § 1400(d)(1)(A) (bracketed material added); citing *Polera*, 288 F.3d at 480-81, 488 (where plaintiff asserted Fourteenth Amendment claim, among other claims, court found all claims subject to IDEA exhaustion because Polera's claim that the district did not provide "appropriate educational services" may be remedied under the IDEA); *J.S. ex. rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 112 (2d Cir. 2004) ("The exhaustion requirement also applies where plaintiffs seek relief under other federal statutes when relief is also available under the IDEA.")).

        From the Complaint, it is difficult to discern whether Plaintiffs' Fourteenth Amendment due process violation claim brought under 42 U.S.C. § 1983 is based on violations of IDEA as they relate to J.D.J.'s expulsion, and for which relief under the IDEA is obtainable, or is a separate due process violation of the type recognized in *Goss v. Lopez,* 419 U.S. 565, 574-76 (1975) (Due Process Clause prohibits "arbitrary deprivations of liberty" which damage a person's reputation and includes school suspensions for 10 or more days).  For example, Plaintiffs state, mistakenly, that J.D.J. has a right under the Fourteenth Amendment of the Constitution to a free and appropriate education, and assert, throughout the Complaint, that J.D.J. was denied a

16

"free and appropriate public education."  However, The Fourteenth Amendment to the Constitution does not entitle J.D.J. to a "free and appropriate public education"; rather, the Supreme Court held the Amendment prohibits the states from depriving persons of "life, liberty or property," *Goss,* 419 U.S. at 572, and, "[p]roperty interests protected by that amendment in turn are created and defined 'by existing rules or understandings that stem from an independent source such as state law.'" *Wright v. Cayan*, 817 F.2d 999, 1002 (2d Cir. 1987).  In *Handberry v. Thompson*, 436 F.3d 52, 70-71 (2d Cir. 2006), the court found New York law, particularly, N.Y. Const. Art. 8, § 1 and N.Y. Educ. L. § 3202(1), establish a property interest in education protected by the Due Process Clause.  It is, therefore, the IDEA, not the Fourteenth Amendment, which guarantees children with disabilities the right to a "free and appropriate public education."  *See* 20 U.S.C. § 1412(a)(1)(A).

It is Plaintiffs' apparent linkage of the term "free and appropriate public education" to almost every infraction Plaintiffs allege against Defendants which gave rise to Defendants' characterization of such alleged infractions as being subject to the IDEA.  See Defendants' Reply Memorandum at 5 (citing Complain ¶¶ 18-23, 26, 28, 30-32, 34-37, 40-41) ("Indeed, the entire premise of each of plaintiffs' Federal claims, including their claims under the IDEA, the Fourteenth Amendment, and 42 U.S.C. [§] 1983, is that, during the time period in question, the District defendants failed to provide J.D.J. with a free and appropriate public education.").  However, a close reading of Plaintiffs' Memorandum in Opposition at 8-13, reveals that is not what Plaintiffs claim. Instead, Plaintiffs' allege that J.D.J.'s expulsion was the result of "the District's illegal act," expelling him because of his disability, citing *Goss*, 419 U.S. at 572-73 (student's

17

right to attend school in state requiring its children to attend school is protected by the

Fourteenth Amendment) and N.Y. Educ. L. § 3202(1) (persons between five and

twenty-one who have not received high school diploma entitled to attend public schools

without paying tuition), and is not based on a demand to obtain relief within the ambit of

the IDEA.  Plaintiffs' Memorandum in Opposition at 9; *Pegram v. Herdrich,* 530 U.S.

211, 230 n. 10 (2000) (citing cases) (the court may look to a party's memorandum of

law in opposition to a motion to dismiss in order to "clarify allegations in . . . [a]

complaint whose meaning is unclear").  Plaintiffs further cite *Goss*, 419 U.S. at 735, in

support of their federal procedural due process claims for the proposition that "'[w]here

a person's good name, reputation, honor, or integrity is at stake because of what the

government is doing to him,' the minimal requirements of the Clause must be satisfied."

*Id.* at 11 (quoting *Goss*, 419 U.S. at 735).

As a threshold matter, if Plaintiffs are alleging a Fourteenth Amendment due

process violation claim based on violations of IDEA for which relief under the IDEA is

obtainable, such claim is subject to exhaustion. *See J.S. ex. rel. N.S. v. Attica Central*

*Schools*, 386 F.3d 108, 112 (2d Cir. 2004) ("The exhaustion requirement also applies

where plaintiffs seek relief under other federal statutes when relief is also available

under the IDEA."); *W.G. v. Senatore*, 18 F.3d 60, 62-63 (2d Cir. 1994) (affirming lower

court); *Ruecker v. Sommer*, 567 F.Supp.2d 1276, 1294 (D. Oregon 2008)*; Scruggs v.*

*Meriden Bd. of Educ.*, 2007 WL 2318851 at *7 (D. Conn. Aug. 10, 2007).  However, as

the court finds in this case that the IDEA exhaustion requirement should be excused

based on futility, and Defendants' failure to provide Plaintiffs with notice of their rights

and procedural remedies, Discussion, *supra* at 14-15, Plaintiffs' Fourteenth Amendment

claims are, for the same reasons, not subject to the exhaustion requirement, and should not be dismissed on this basis.  Alternatively, should the District Judge find Plaintiffs have asserted a § 1983 claim for a due process violation based solely on a violation of J.D.J.'s due process rights for which relief under IDEA was not obtainable and which claim is not based on the failure to receive a FAPE under the IDEA, exhaustion does not apply to alleged due process violations brought pursuant to § 1983, and Plaintiffs' claims are subject to the standard established in *Goss, supra*.[17,18]  *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 468 n. 12 (2d Cir. 2006) (exhaustion of administrative remedies is not a precondition to suit for due process violations pursuant to § 1983) (citing *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982)).  Defendants' motion for summary judgment against Plaintiffs' § 1983 claim, alleging Defendants' Fourteenth Amendment Due Process Clause violations, based on Plaintiffs' failure to exhaust administrative remedies, should therefore be DENIED.

## III.    Plaintiffs' State Law Claims

Defendants assert the court should decline to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over Plaintiffs' state law claims because, according to

---

[17]  *See Bogle-Assegai v. Cent. Conn. State Univ.*, 2009 WL 506655, at * 1 (2d Cir. March 2, 2009) (summary order) (recognizing *Goss* requires minimum procedural due process where public school students are suspended for ten days or less); *Handberry*, 436 F.3d at 71; *Ramos v. Town of Vernon*, 353 F.3d 171, 178 (2d Cir. 2003) (*Goss* extends procedural due process protection to "children").

[18]  *Doe v. Rockingham County Sch. Bd., 658 F.Supp.* 403, 407-08 (W.D. Va. 1987) (citing *S-1 v. Turlington*, 635 F.2d 342 (5th Cir.), *cert. denied*, 454 U.S. 1030 (1981), and *Stuart v. Nappi*, 443 F.Supp. 1235 (D.Conn. 1978)) stand for the proposition that suspension under the Education for All Handicapped Children Act of 1975 (IDEA's predecessor), then 20 U.S.C. §§ 1401-1461, though it may be a permissible disciplinary tool when proper procedures are followed, violates procedural due process requirements under *Goss* when the suspension results in complete cessation of education during the student's period of expulsion).

Defendants, the court lacks subject matter jurisdiction over Plaintiffs' federal claims.

Defendants' Memorandum at 10.  As discussed, Discussion, *supra*, at 16-19, as subject

matter jurisdiction over Plaintiffs' federal claims, including Plaintiffs' procedural due

process claims, is present, Defendants' motion to dismiss Plaintiffs' state law claims, on

this ground, should also be DENIED.


## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. No.

31) should be DENIED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       March 11, 2009
             Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:　　　March 12, 2009
　　　　　　Buffalo, New York